UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GARY T. MARTIN,
    Petitioner,

vs.

WARDEN, CORRECTIONAL
RECEPTION CENTER,
    Respondent.

Case No. 1:15-cv-94

Dlott, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

Petitioner, an inmate in state custody at the Correctional Reception Center in Orient, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 3). This matter is before the Court on respondent's motion to dismiss (Doc. 6), which petitioner opposes. (*See* Doc. 9).[1]

## I. PROCEDURAL HISTORY

### A. State Trial And Appeal Proceedings

In June 2009, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with one count of abduction in violation of Ohio Rev. Code § 2905.02(A)(2) (Count 1), one count of aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(1) (Count 2), and one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2) (Count 3). (Doc. 5, Ex. 1). The facts giving rise to the charges, as derived from evidence presented by the State at

---

[1] Respondent has separately filed 28 exhibits obtained from the underlying state-court record as support for the motion to dismiss. (*See* Doc. 5). Respondent has also filed a brief in reply to petitioner's opposition memorandum. (Doc. 11).

petitioner's trial, were summarized as follows by the Ohio Court of Appeals, First Appellate District:[2]

> After spending a night in jail for failing to appear to answer marijuana-possession charges, Martin travelled to the apartment of an 18-year-old mentally disabled woman whom Martin had befriended and with whom he had had sexual relations in the past. At the apartment, Martin became enraged after seeing used condoms in the victim's trash. Over the next three hours, he held the victim at knifepoint, verbally and physically abused her, compelled her to write a suicide note, and threatened to kill her by making her swallow bleach and cleanser. After those three hours, Martin's victim was able to escape from his control. With Martin in hot pursuit, the victim summoned help from an upstairs neighbor. Martin then returned to the victim's apartment and took her apartment keys and her cellular phone and access card.

(*Id.*, Ex. 8, p. 1, at PAGEID#: 88).

The matter proceeded to trial before a jury, which found petitioner guilty as charged. (*See id.*, Ex. 3). On December 11, 2009, following a sentencing hearing, the trial court issued the final judgment entry sentencing petitioner to an aggregate 20-year term of imprisonment, which consisted of consecutive prison terms of four (4) years for the abduction offense, nine (9) years for the aggravated robbery offense and seven (7) years for the felonious assault offense. (*Id.*, Ex. 4).

With the assistance of new counsel for appeal purposes, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District. (*Id.*, Ex. 5). In his appellate brief, he presented the following assignments of error:

---

[2] The Ohio appellate court summarized the facts in its direct appeal decision filed February 16, 2011. (*See* Doc. 5, Ex. 8). 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless the petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has argued that the State's version of events is based on false testimony. However, he has not presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein. Therefore, the appellate court's findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

1. The jury erred to the prejudice of the Defendant-Appellant by finding him guilty of abduction, aggravated robbery, and felonious assault, as those findings were not supported by sufficient evidence.

2. The jury erred to the prejudice of the Defendant-Appellant by finding him guilty of abduction, aggravated robbery, and felonious assault, as those findings were contrary to law.

3. The trial court erred to the prejudice of the Defendant-Appellant by overruling his Motion for Acquittal under Ohio Criminal Procedure Rule 29.

4. The trial court erred to the prejudice of Defendant-Appellant by imposing a sentence that is an abuse of discretion.

5. The trial court erred to the prejudice of Defendant-Appellant in sentencing him on Counts 1 and 2.

(*Id.*, Ex. 6, pp. 3-6, at PAGEID#: 63-66). On February 16, 2011, the Ohio Court of Appeals issued a Judgment Entry overruling the assignments of error and affirming the trial court's judgment. (*Id.*, Ex. 8).

Assisted by new counsel from the Ohio Public Defender's Office, petitioner timely appealed to the Ohio Supreme Court. (*See id.*, Exs. 9-10). In his memorandum in support of jurisdiction, he asserted as the sole proposition of law that "[w]hen no rational trier of fact would have found all elements to have been established beyond a reasonable doubt, an aggravated robbery conviction is based on insufficient evidence." (*Id.*, Ex. 10, at PAGEID#: 96). On May 25, 2011, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. 12).

### B. Prior Federal Habeas Corpus Petition

On May 14, 2012, nearly a year after the Ohio Supreme Court issued the final ruling in the state appeal proceedings, petitioner filed a *pro se* petition for a writ of habeas corpus pursuant to

3

28 U.S.C. § 2254 with this Court.[3] (Doc. 5, Ex. 13). In the petition, petitioner alleged two grounds for relief challenging the sufficiency of evidence supporting his convictions and his consecutive sentences for "[a]llied [o]ffenses." (*See id.*, at PAGEID#: 113, 115).

It appears from the record that over a year later, on June 12, 2013, after the respondent had filed a return of writ responding to the petition on November 5, 2012 and petitioner had filed a "traverse" brief in reply to the return of writ, petitioner filed a motion to dismiss the petition without prejudice or to stay and hold the petition in abeyance while he exhausted a new claim in the state courts. (*See id.*, Ex. 14, at PAGEID#: 125-26). The undersigned issued a Report and Recommendation on November 19, 2013 recommending that petitioner's motion for stay be denied and that petitioner's request to dismiss the petition without prejudice be granted unless the petitioner withdrew that request within thirty days. (*Id.*, Ex. 14). In the Report and Recommendation, the undersigned reasoned that "petitioner should be permitted the opportunity to withdraw his request to dismiss the petition without prejudice" out of concern "that although the instant petition is not time-barred, any subsequent habeas petition petitioner may file raising the same claims for relief will face a statute-of-limitations bar to review." (*Id.*, at PAGEID#: 130-31). Petitioner was expressly informed that "[t]he one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), which governs petitioner's claims, has not been tolled during the pendency of petitioner's federal habeas petition. *See Duncan v. Walker*, 533 U.S. 167, 181-82

---

[3] Although the petition was stamped by the Clerk's Office as "filed" on June 14, 2012, it is well-settled that the filing date of a federal habeas corpus petition submitted by a *pro se* prisoner is the date on which the prisoner provides his papers to prison authorities for mailing. *See Houston v. Lack,* 487 U.S. 266 (1988); *see also Miller v. Collins,* 305 F.3d 491, 497-98 (6th Cir. 2002); *Goins v. Saunders,* 206 F. App'x 497, 499 n.1 (6th Cir. 2006). Because petitioner averred in the petition that he placed the pleading in the prison mailing system on May 14, 2012 (*see* Doc. 5, Ex. 13, at PAGEID#: 123), the undersigned has, therefore, considered that date to be the presumptive filing date of petitioner's prior federal habeas petition.

(2001)." (*Id.*). Petitioner responded to the Report and Recommendation by filing objections, but he did not seek to withdraw his request for dismissal without prejudice. (Doc. 5, Ex. 15, at PAGEID#: 135). On March 27, 2014, the District Court issued the final order and judgment in the matter--overruling petitioner's objections to the Report and Recommendation, denying petitioner's motion for stay, and granting petitioner's request to dismiss the petition without prejudice. (*Id.*, Ex. 15-16).

### C. State Proceedings: Motion For New Trial

On November 18, 2013, while his motion for stay or dismissal of his prior federal habeas petition was still pending before this Court for ruling, petitioner filed a *pro se* motion for new trial with the Hamilton County Common Pleas Court. (Doc. 5, Ex. 17). He generally claimed in the motion that the State had intentionally permitted "false evidence" to be presented and "false testimony to go uncorrected" in order to obtain his conviction. (*See id.*). Petitioner stated that Jeffrey Napier was a "critical" witness, who was available and should have been called to testify at trial to establish his innocence. (*See id.*). Petitioner attached to the motion his own affidavit executed on July 26, 2013 and two affidavits by Napier that were executed on October 25, 2013. (*Id.*, at PAGEID#: 148-56). Napier stated in one of his affidavits that he had been advised by petitioner's trial counsel that he would be subpoenaed to testify at trial as a defense witness, but was later told that he would not be called as a defense witness because his "word wouldn't do any good [as he] was a convicted felon and what [he] had to say wouldn't matter." (*See id.*, at PAGEID#: 148). In the second affidavit, Napier averred that the alleged victim did not "have any cuts or bruises on her neck" when he spoke to her in June 2009. (*Id.*, at PAGEID#: 149). Napier also stated:

5

> Around the time of the incident [the victim] gave her house keys to a guy named Lil O. When I seen Lil O he told me he had the keys to her apartment but he didn't want nobody to know cause he didn't want to be involved.

(*Id.*). In his affidavit, petitioner averred, as he had testified at trial, that the victim essentially lured him to her apartment as part of a conspiracy with two other men to rob him. (*See id.*, at PAGEID#: 150-56; *see also* Ex. 6, pp. 2-3, at PAGEID#: 62-63).

On November 26, 2013, the trial court denied the motion for new trial as "not well taken." (*Id.*, Ex. 18).

On January 17, 2014, petitioner filed a *pro se* motion for leave to file a delayed appeal to the Ohio Court of Appeals, First Appellate District, which was granted. (*Id.*, Exs. 19-20). In his appellate brief, petitioner presented the following assignments of error:

1. The trial court abused its discretion in ruling on a motion for a new trial under Crim.R. 33 without first having a hearing . . . because the documents attached to the motion for leave demonstrated on its face that Defendant-Appellant could not with due diligence have discovered new evidence within 120 days of the verdict.

2. Defendant-Appellant was denied a fair trial due to prosecutorial misconduct, due to its failure to disclose "Brady Material" favorable to the defense, in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Consti[t]ution.

3. Defendant-Appellant was denied a fair trial due to witness misconduct, due to fal[se] evidence and perjured testimony, in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sec[t]ions 10 and 16 of the State of Ohio Constitution.

(*Id.*, Ex. 21).

On November 19, 2014, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment. (*Id.*, Ex. 23). Respondent states that petitioner did not pursue

an appeal to the Ohio Supreme Court from that ruling. (Doc. 6, p. 6, at PAGEID#: 225).

### D. Current Federal Habeas Corpus Petition

Petitioner filed the instant petition for federal habeas corpus relief on January 30, 2015, the date that petitioner states he placed the pleading in the prison mailing system for delivery to the Court.[4] (*See* Doc. 3, at PAGEID#: 43). In the petition, petitioner presents the following grounds for relief:

**Ground One:** Martin's convictions are based on insufficient evidence.

**Ground Two:** Allied Offenses Violation – 5th and 14th Amendment[s].

(*Id.,* at PAGEID#: 33, 35).

Respondent has filed a motion to dismiss the petition. (Doc. 6). Respondent contends that the petition is subject to dismissal with prejudice because it is barred from review by the applicable one-year statute of limitations governing federal habeas actions by state prisoners, which is set forth in 28 U.S.C. § 2244(d). (*Id.,* pp. 7-11, at PAGEID#: 226-30). Petitioner has filed a brief opposing the motion to dismiss. (Doc. 9). Respondent has filed a brief in reply to petitioner's opposition memorandum. (Doc. 11).

## II. RESPONDENT'S MOTION TO DISMISS (DOC. 6) SHOULD BE GRANTED BECAUSE THE PETITION IS TIME-BARRED

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody

---

[4] The petition was stamped as received for filing on February 9, 2015. (*See* Doc. 3). However, as noted earlier, *see supra* p.4 n.3, it is well-settled that the filing date of a federal habeas corpus petition submitted by a *pro se* prisoner is the date on which the prisoner provides his papers to prison authorities for mailing. *See Houston v. Lack,* 487 U.S. 266 (1988); *see also Miller v. Collins,* 305 F.3d 491, 497-98 (6th Cir. 2002); *Goins v. Saunders,* 206 F. App'x 497, 499 n.1 (6th Cir. 2006).

pursuant to the judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

No argument has been presented to suggest that any provision other than the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A) applies to the two claims that are asserted as grounds for relief in the instant action. The alleged errors occurred during the trial proceedings and were either known or discoverable through the exercise of due diligence before the conclusion of direct review. Indeed, the claims were asserted as assignments of error on direct appeal to the Ohio Court of Appeals *before* petitioner's conviction became final within the meaning of § 2244(d)(1)(A). Therefore, as respondent has argued in the motion to dismiss (*see* Doc. 6, p. 7, at PAGEID#: 226), the statute began to run under § 2244(d)(1)(A) when the challenged judgment of conviction and sentence was rendered "final" by the conclusion of direct review or the expiration of time for seeking such review.

In this case, as respondent has recognized (*see id.*, p. 9, at PAGEID#: 228), petitioner's

8

conviction did not become "final" within the meaning of § 2244(d)(1)(A) until August 23, 2011, when the 90-day period expired for filing a timely petition for writ of certiorari to the United States Supreme Court from the Ohio Supreme Court's May 25, 2011 final ruling dismissing petitioner's direct-review appeal. (*See* Doc. 5, Ex. 12); *see also Gonzalez v. Thaler*, __ U.S. __, 132 S.Ct. 641, 653-54 (2012) (holding as suggested in *Clay v. United States*, 537 U.S. 522, 527, 529 (2003) and *Jimenez v. Quarterman*, 555 U.S. 113, 119-21 (2009), that "conclusion of direct review" under § 2244(d)(1)(A) occurs when (1) the Supreme Court "affirms a conviction on the merits or denies a petition for certiorari" or (2) "the time for pursuing direct review in [the Supreme] Court, or in state court, expires"). *Cf. Lawrence v. Florida,* 549 U.S. 327, 333-34 (2007) (concluding that in contrast to the tolling provision set forth in 28 U.S.C. § 2244(d)(2), "direct review" for purposes of determining finality under § 2244(d)(1)(A) includes the time for seeking review in the United States Supreme Court). The statute of limitations commenced running on August 24, 2011, one day after petitioner's conviction became final within the meaning of § 2244(d)(1)(A), *see* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000), and expired one year later absent application of statutory or equitable tolling principles.

During the one-year limitations period that began on August 24, 2011, petitioner was entitled to tolling of the statute under 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2); *see also Holland v. Florida,* 560 U.S. 631, 635 (2010); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (per curiam); *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003). "The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can

only serve to pause a clock that has not yet fully run." *Vroman,* 346 F.3d at 602 (quoting *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998)). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Id.*

In this case, petitioner filed his prior federal habeas petition in May 2012 before the expiration of the limitations period. However, as petitioner was expressly informed in that prior action, the limitations period was not tolled while the petition was pending before this Court because the pleading did not constitute a *state* collateral review petition within the meaning of § 2244(d)(2). *See Duncan v. Walker,* 533 U.S. 167, 181-82 (2001). Furthermore, although petitioner filed a motion for new trial on November 18, 2013, which qualified as a state collateral review pleading under the statutory tolling provision, it could not toll the limitations period that had already expired over a year earlier. Therefore, neither petitioner's prior federal habeas petition nor his motion for new trial served to statutorily toll the limitations period beyond the statute's expiration in August 2012.

The AEDPA's statute of limitations is subject to equitable tolling, *see Holland,* 560 U.S. at 645, "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson,* 624 F.3d 781, 783 (6th Cir. 2010)). Equitable tolling is granted "sparingly." *Id.* (quoting *Robertson,* 624 F.3d at 784). A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland,* 560 U.S. at 649 (internal quotations omitted)); *see also Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005). Although the Sixth Circuit previously utilized a five-

10

factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland*'s two-part test has replaced the five-factor inquiry as the "governing framework" to apply. *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling,* 424 F. App'x 439, 442 n.1 (6th Cir. 2011)). "With *Holland* now on the books, the 'extraordinary circumstances' test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit." *Id.*; *see also Patterson v. Lafler,* 455 F. App'x 606, 609 n.1 (6th Cir. 2012).

In his response to the motion to dismiss, petitioner contends that he is entitled to equitable tolling of the limitations period because "he has diligently pursued his rights" and "his understanding of the law as a pro se litigant constituted an extraordinary circumstance that prevented him from bringing his petition in a timely manner." (Doc. 9, p. 2, at PAGEID#: 236). Petitioner states that he did not know that the statute of limitations was not tolled while his prior timely habeas petition was pending before this Court "because he was of the impression that as long as there was an active proceeding the clock had stopped." (*Id.*, p. 3, at PAGEID#: 237). Petitioner argues that he "was reasonable in his ignorance" of the law because he was "ill advised . . . to dismiss the original petition in order to [exhaust a claim] in his motion for new trial" and was led to believe "that at the time he withdrew his initial petition, the one-year [limitations] period was tolled during the pend[ency] of that petition." (*Id.*, p. 5, at PAGEID#: 239). The undersigned is not persuaded by petitioner's argument.

Even assuming that petitioner has been diligently pursuing his rights,[5] he has not shown

---

[5] An argument can be made that petitioner has not been diligent in pursuing his rights. He waited nearly a year after the Ohio Supreme Court issued the final ruling in the appeal proceedings before taking any action to challenge his conviction or sentence by way of his prior federal habeas petition; delayed over a year more before he sought to withdraw the prior petition to exhaust a new claim in the state courts; and did not initiate any proceedings in

11

that an extraordinary circumstance stood in his way to prevent him from filing a timely habeas petition. Indeed, the timely filing of the prior habeas petition raising the same two claims asserted in the instant action demonstrates that nothing stood in petitioner's way that kept him from filing a timely petition. To the extent that petitioner has contended he is entitled to equitable tolling because his *pro se* status and ignorance of the law on tolling caused him to withdraw his prior petition, thereby creating the statute-of-limitations bar to review he now faces, it is well-settled that that neither lack of knowledge of the law nor the inability to obtain legal assistance constitutes an extraordinary circumstance sufficient to justify equitable tolling of the limitations period. *Cf. Hall*, 662 F.3d at 751-52; *see also Johnson v. United States,* 544 U.S. 295, 311 (2005) (in a case where the defendant defended his delay in challenging a state conviction on the basis of his *pro se* status and lack of "sophistication" in understanding legal procedures, the Court stated: "[W]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness.").

In any event, the record belies petitioner's contention that he was not aware of the fact that the statute of limitations was not tolled during the pendency of the prior federal habeas action. Petitioner was expressly warned in the prior action that any "subsequent habeas petition petitioner may file raising the same claims for relief will face a statute-of-limitations bar to review" because "[t]he one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), which governs petitioner's claims, has not been tolled during the pendency of petitioner's federal habeas petition. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001)." (*See* Doc. 5, Ex. 14, at PAGEID#: 130-

---

the state courts for the purpose of exhausting the new claim until over six months after he filed his motion in the federal habeas proceeding requesting a stay or dismissal of the action on exhaustion grounds.

12

31). Although petitioner was provided the opportunity to withdraw his request to dismiss the prior petition in light of that information, he did not do so. Petitioner should not now be permitted to avoid the consequences that he knew would result from the withdrawal of his prior petition.

Finally, petitioner has not shown that the procedural bar to review should be excused based on a colorable showing of actual innocence. The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" a statute-of-limitations bar to review. *McQuiggin v. Perkins*, __ U.S. __, 133 S.Ct. 1924, 1928 (2013). The Supreme Court has made it clear, however, that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup v. Delo,* 513 U.S. 298, 329 (1995)); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (pointing out that the *Schlup* actual-innocence standard is "demanding and permits review only in the extraordinary case") (internal citation and quotation marks omitted). To establish a credible gateway claim of actual innocence, the petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324; *see also Connolly v. Howes*, 304 F. App'x 412, 417 (6th Cir. 2008). In evaluating "new evidence" presented by a petitioner, the court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup*, 513 U.S. at 332; *see also Eberle v. Warden, Mansfield Corr. Inst.*, 532 F. App'x 605, 612-13 (6th Cir. 2013) (quoting *McQuiggin*, 133 S.Ct. at 1935) ("Although a

13

petitioner who asserts a convincing actual-innocence claim does not have to 'prove diligence to cross a federal court's threshold,' timing remains 'a factor relevant in evaluating the reliability of a petitioner's proof of innocence.'"). Moreover, in assessing whether the petitioner has established a convincing claim of actual innocence sufficient to overcome the procedural bar to review, the court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House*, 547 U.S. at 538 (internal citation and quotation marks omitted).

Here, the only evidence arguably supporting an actual-innocence claim are the affidavits submitted by petitioner in support of his motion for new trial filed with the trial court in November 2013. As discussed above, the evidence consisted of petitioner's own affidavit executed on July 26, 2013 and two affidavits by Jeffrey Napier that were executed on October 25, 2013. (*See* Doc. 5, Ex. 17, at PAGEID#: 148-56). Such evidence is not "new" to the extent that the information contained in the submissions was known to petitioner and defense counsel at the time of petitioner's trial four years earlier. Even assuming that the materials belatedly submitted by petitioner constitute "new evidence," they fail to establish a colorable claim of actual innocence.

First, petitioner's self-serving affidavit essentially corroborates his trial testimony, which was rejected by the jury when it convicted him. In any event, the affidavit is "inherently suspect" and does not constitute "reliable" evidence of petitioner's innocence. *Cf. Freeman v. Trombley*, 483 F. App'x 51, 58 (6th Cir. 2012); *see also Betts v. Tibbals,* No. 1:11cv01107, 2014 WL 4794530, at *48 (N.D. Ohio Sept. 24, 2014) (finding the petitioner's own self-serving affidavit to be lacking in credibility and reliability). Second, the belated affidavits by Napier, who also

lacked first-hand knowledge of the events giving rise to the criminal charges, are suspect and fall "far short of the sort of extraordinary showing—like exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—needed to establish [the petitioner's] actual innocence." *See Freeman*, 483 F. App'x at 60 (finding that the credibility of the petitioner's ex-girlfriend and mother of his child was "suspect" and holding that her alibi affidavit submitted years after the petitioner's trial was insufficient to establish a credible actual-innocence claim); *see also Milton v. Sec'y, Dep't of Corr.*, 347 F. App'x 528, 531-32 (11th Cir. 2009) (holding that the "threshold showing of actual innocence" was not met by affidavits, found to be unreliable, that were submitted by the petitioner's friends and family members several years after the petitioner's trial); *Keith v. Palmer*, No. 14-13340, 2015 WL 1530331, at *4-6 (E.D. Mich. Mar. 31, 2015) (holding that the "demanding actual innocence standard" was not satisfied by affidavits with "significant credibility problems" to the extent that they were either not based on first-hand knowledge or belatedly submitted without any explanation given for the filing delays), *appeal filed*, Case No. 15-1496 (6th Cir. Apr. 30, 2015); *Harris v. Smith*, No. 2:12cv14210, 2013 WL 3873168, at *5 (E.D. Mich. July 25, 2013) ("Long delayed statements are viewed with extreme suspicion."). Therefore, upon review of the record, the undersigned is convinced that petitioner's submissions are insufficient to establish a credible claim of actual innocence.

Accordingly, in sum, the undersigned concludes that the instant federal habeas corpus petition is barred from review by the one-year statute of limitations governing habeas corpus actions brought pursuant to 28 U.S.C. § 2254. Under the applicable statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), the statute began to run on August 24, 2011, one day after petitioner's December 11, 2009 conviction and sentence became final by the conclusion of direct

15

review or expiration of time for seeking such review, and expired one year later in August 2012. Neither statutory nor equitable tolling principles apply to further extend the limitations period or otherwise avoid the statute of limitations bar to review in this case. Therefore, respondent's motion to dismiss (Doc. 6) should be **GRANTED** on the ground that the petitioner's habeas corpus petition, filed at the earliest on January 30, 2015, is time-barred.

### IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss (Doc. 6) be **GRANTED**, and petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DISMISSED** with prejudice on the ground that the petition is time-barred under 28 U.S.C. § 2244(d).

2. A certificate of appealability should not issue with respect to any of the claims for relief alleged in the petition, which this Court has concluded is barred from review on a procedural ground, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural ruling.[6]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 12/14/15

Karen L. Litkovitz
United States Magistrate Judge

---

[6] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in his time-barred grounds for relief. *See Slack,* 529 U.S. at 484.

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GARY T. MARTIN,
    Petitioner,

vs

WARDEN, CORRECTIONAL
RECEPTION CENTER,
    Respondent.

Case No. 1:15-cv-94

Dlott, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc